# UNITED STATES BANKRUPTCY COURT
# FOR THE EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | |
|---|---|
| In re:<br><br>TIMOTHY ALLEN WARD, SR.,<br><br>　　　Debtor. | Case No. 16-11676-KHK<br>(Chapter 7) |
| LIBERTY MUTUAL INSURANCE COMPANY,<br><br>　　　Plaintiff,<br><br>vs.<br><br>TIMOTHY ALLEN WARD, SR.,<br><br>　　　Defendant. | Adv. Proc. No. 16-1174 |

## MEMORANDUM OPINION

THIS CASE came before the court on February 7, 2017, on Liberty Mutual Insurance Company's ("Liberty") Motion for Summary Judgment (Docket Entry 10). Liberty filed a complaint against the debtor asserting that the debts owed were excepted from discharge under 11 U.S.C. § 523(a)(4).

### Findings of Fact

I.　　The Estate of Paul Klein

The debtor, a licensed Virginia attorney, was appointed as administrator of the estate of Paul Klein ("Klein Estate") on May 28, 2002. The debtor posted bond in the amount of $591,000.00, with surety provided by Liberty. On September 25, 2002, the debtor filed an

1

inventory with Commissioner of Accounts for Fairfax County ("Commissioner") in which he reported Klein Estate assets totaling $590,941.86. The inventory was approved on February 23, 2003.

In March 2003, the debtor executed a Surety Application and Indemnity Agreement with Liberty, whereby Liberty agreed to provide surety on the debtor's bond and the debtor agreed to "exonerate and indemnify [Liberty] from and against all claims, losses, liability, damages . . . costs, fees, expenses, suits, orders, judgments, or adjudications" that Liberty may thereafter have incurred in connection with the bond.

On November 30, 2003, the debtor filed a first account for the Klein Estate. Since the debtor filed the first account in 2003, all of the subsequent accounts were and remained delinquent. The debtor was ultimately removed as administrator of the Klein Estate on April 6, 2012. The Circuit Court of Fairfax County ordered that the debtor was to remain liable on his bond until he had filed all required accounts for the Klein Estate, which he has yet to do. The substitute administrator received statements from the IRS and Virginia Department of Taxation indicating that the Klein Estate owed penalties and interest. On September 17, 2013, the Virginia State Bar Disciplinary Board suspended the debtor's license to practice law within Virginia for two years. On September 5, 2014, a judgment was entered against the debtor in favor of Liberty for $35,115.95 plus interest, fees, and costs.

II.    The Estate of Paul Hamilton

On March 31, 2003, the debtor was appointed as administrator of the estate of Richard Hamilton ("Hamilton Estate"). The debtor was required to post bond for $74,000.00, with surety provided by Liberty, and he entered into an indemnity agreement similar to the one used in the

Klein Estate. The debtor also executed a Fiduciary Acknowledgment Form, indicating that he understood the extent of his duties and that he could be held liable for violations of the same.

After appointment as administrator, the debtor failed to respond to notices sent by the Commissioner regarding deficiencies in the first filed accounting, failed to file the subsequent accountings, and failed to pay the bond premiums, resulting in a claim against the Hamilton Estate. The debtor was eventually removed as administrator of the Hamilton Estate. The substitute administrator was able to resolve the deficiencies without a loss payment from Liberty; however, Liberty did incur related attorney's fees.

III.    The Estate of Jillian Cho

On April 5, 2007, the debtor was appointed as substitute fiduciary for the estate of Jillian Cho ("Cho Estate"). The debtor posted a bond for $580,000.00, with surety provided by Liberty, through its wholly-owned subsidiary Ohio Casualty Insurance Company. Again, the debtor entered into a similar indemnity agreement.

On December 6, 2010, based on a report from the Commissioner of Accounts for Prince William County, the Prince William County Circuit Court ordered that the bond was to be forfeited in the amount of $21,250.52 for debtor's "misfeasance and/or malfeasance." On the same date, a judgment was entered in favor of Liberty against the debtor for $29,856.03 plus interest.

**Standard of Law**

Summary judgment is appropriate where there is no genuine dispute as to any material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Bankr.P. 7056. The moving party has the initial burden of showing that there are no material facts in dispute and that

3

it is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–24 (1986). When the moving party has met its initial burden, the burden then shifts to the non-moving party to present specific facts demonstrating that there is a genuine issue for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986). Whether a fact is material or not depends on the substantive law at issue in the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id*.

## Conclusions of Law

Liberty argues that debts owed to it by the debtor are non-dischargeable due to alleged defalcation against the estates administered by the debtor, as a fiduciary, pursuant to 11 U.S.C. § 523(a)(4). Section 523(a)(4) excepts from discharge "any debt . . . for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny." In the Fourth Circuit, a creditor asserting non-dischargeability under § 523(a)(4) must prove (1) the debtor was acting in a fiduciary capacity when the debt arose; and (2) the debt arose from the debtor's defalcation. *Kubota Tractor Corp. v. Strack (In re Strack)*, 524 F.3d 493, 497 (4th Cir. 2008). The case of *Bullock v. BankChampaign, N.A.,* 133 S.Ct. 1754 (2013), has since changed the law in the Fourth Circuit with respect to the proof needed to sustain a claim under § 523(a)(4). *Bullock* raised the standard from "negligence or even an innocent mistake which results in the failure to account" to that of intentional misconduct, or at least reckless disregard of a known duty. The Supreme Court held with respect to the term "defalcation:"

Thus, where the conduct at issue does not involve bad faith, moral turpitude, or other

immoral conduct, the term requires an intentional wrong. We include as intentional not only conduct that the fiduciary knows is improper but also reckless conduct of the kind that the criminal law often treats as the equivalent. Thus, we include reckless conduct of the kind set forth in the Model Penal Code. Where actual knowledge of wrongdoing is lacking, we consider conduct as equivalent if the fiduciary "consciously disregards" (or is willfully blind to) "a substantial and unjustifiable risk" that his conduct will turn out to violate a fiduciary duty. ALI, Model Penal Code § 2.02(2)(c), p. 226 (1985). See id., § 2.02 Comment 9, at 248 (explaining that the Model Penal Code's definition of "knowledge" was designed to include " 'wilful blindness' "). That risk "must be of such a nature and degree that, considering the nature and purpose of the actor's conduct and the circumstances known to him, its disregard involves a gross deviation from the standard of conduct that a law-abiding person would observe in the actor's situation." Id., § 2.02(2)(c), at 226 (emphasis added). Cf. *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 194, n. 12, 96 S.Ct. 1375, 47 L.Ed.2d 668 (1976) (defining scienter for securities law purposes as "a mental state embracing intent to deceive, manipulate, or defraud").

*Bullock*, 133 S.Ct. at 1759–60.

To succeed in a claim under § 523(a)(4) Liberty must first establish that the debtor was acting in a "fiduciary capacity" during his tenure as administrator or guardian of the estates. In the Eastern District, courts restrict the term "fiduciary" as used in § 523(a)(4) to "the class of fiduciaries including trustees of specific written declarations of trust, guardians, administrators, executors or public officers and, absent special considerations, does not extend to the more general class of fiduciaries such as agents, bailees, brokers, factors and partners." *Sager v. Lewis (In re Lewis)*, 94 B.R. 406, 410 (Bankr. E.D. Va. 1988). Courts have held that estate administrators and guardians fall under the purview of a fiduciary as the term is used in § 523(a)(4). *See In re Reed*, 155 B.R. 169 (Bankr. S.D. Ohio 1993) (finding that administrator of probate estate was acting in a fiduciary capacity); *Aetna Ins. Co. v. Byrd (In re Byrd)*, 15 B.R. 154 (Bankr. E.D. Va. 1981) (determining that debtor who was appointed as his father's committee stood in a fiduciary relationship to his father's estate). As an administrator and

5

guardian of the estates, the debtor was clearly acting in a "fiduciary capacity." Thus, Liberty is granted summary judgment as to the first element under § 523(a)(4).

In reviewing the record, materials submitted by the parties, and arguments of counsel, the Court determines that a dispute as to the debtor's culpable state of mind exists, and, therefore, Liberty is not entitled to summary judgment as to the second element required under § 523(a)(4). According to *Bullock*, defalcation under § 523(a)(4) requires a showing of a "culpable state of mind requirement involving knowledge of, or gross recklessness in respect to, the improper nature of the relevant fiduciary behavior." *Bullock*, 133 S.Ct. at 1755. While Liberty demonstrated, through its papers and counsel's argument at the hearing, that the debtor shirked his responsibilities as administrator and guardian of the various estates, it did not sufficiently establish that the debtor's actions rose to the heightened level of a "gross deviation" from the expected standard of conduct required under *Bullock*. Considering all inferences in favor of the non-moving party, there exists a dispute as to this element and Liberty is not entitled to judgment as a matter of law as to the second element under § 523(a)(4).

Liberty's motion for summary judgment is granted in part and denied in part. The Court finds that a debt exists between Liberty and the debtor and that the debt arose from debtor's actions in his fiduciary capacity. As such, Liberty is entitled to summary judgment on these elements of its § 523(a)(4) action. However, a dispute exists as to whether this debt arose from the debtor's alleged defalcation, as that term has been defined by the Supreme Court in *Bullock*. That issue must be reserved for trial. A contemporaneous order consistent with this memorandum opinion will be entered.

DONE at Alexandria, Virginia, this 5th day of May, 2017.

May 12 2017

/s/ Klinette Kindred

_____

Klinette H. Kindred
United States Bankruptcy Judge

Copy electronically to:

eod 5/12/2017

James R. Schroll
John P. Goetz