## UNITED STATES BANKRUPTCY COURT
### Eastern District of Virginia
### Alexandria Division

In re:

Timothy Allen Ward, Sr.,                                Case No. 16-11676-KHK
                                                        Chapter 7
     Debtor.

Liberty Mutual Insurance Company,

     Plaintiff,

v.                                                      AP No. 16-01174-KHK

Timothy Allen Ward, Sr.,

     Defendant.

## MEMORANDUM OPINION

This matter comes before the Court on the Complaint for Determination of Nondischargeability of Debt filed by Liberty Mutual Insurance Company ("Liberty" or the "Plaintiff") seeking to have debts owed by Timothy Allen Ward, Sr. (the "Debtor" or "Defendant") excepted from discharge. Trial of the matter was conducted on September 1, 2017. For the reasons set forth below, the Court finds that the debts owed to Liberty resulted from the Debtor's defalcation and are nondischargeable pursuant to § 523(a)(4) of the Bankruptcy Code, 11 U.S.C. § 523(a)(4).

## Procedural History

Liberty commenced this adversary proceeding by filing a complaint on August 15, 2016, alleging that the Debtor committed defalcations while acting in a fiduciary capacity in connection with two estates in which he was

appointed administrator for a decedent and a third estate in which he had been appointed as guardian for an incapacitated adult. In each of the appointments, the Debtor was required by the state court to post a bond. Liberty provided surety on the bonds, and the Debtor agreed to indemnify Liberty from any claims or losses that Liberty incurred in connection with the bonds. Liberty incurred losses on the bonds, and the complaint seeks to have its claims for indemnification declared nondischargeable due to the Debtor's breach of his fiduciary duties and defalcations.

In his answer to the complaint, the Debtor generally denies that he consciously or recklessly breached his fiduciary duties. The Debtor claims that his alleged failures to properly administer the estates were, at most, the result of ordinary negligence and are insufficient to establish the elements necessary to have the debts declared nondischargeable under § 523(a)(4).[1]

On December 30, 2016, Liberty filed a motion for summary judgment. On May 12, 2017, the Court entered an order and memorandum opinion granting summary judgment in part and denying it in part.[2] The Court found that a debt exists between Liberty and the Debtor and that the debt

---

[1] The Defendant's answer to the complaint also asserts the Plaintiff's failure to state a claim upon which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6), its lack of standing and assumption of the risk. None of these additional defenses were raised by the Defendant at trial and no evidence was offered to support them. There being no basis to accept any of these assertions, to the extent that any of them survived the Court's ruling on Liberty's summary judgment motion, they are rejected.

[2] Docket 31, 32.

2

arose from the Debtor's having acted in a fiduciary capacity.  The Court ruled

that Liberty was entitled to summary judgment on those elements of

§ 523(a)(4).  The Court further found that a dispute existed as to whether the

debts arose from the Debtor's alleged defalcation and reserved that issue for

trial.

**<u>Findings of Fact</u>**

As part of its memorandum opinion issued on May 12, 2017, the Court

made findings of fact.  Those findings were not contradicted at trial and are

incorporated herein as follows:

I.      The Estate of Paul Klein (the "Klein Estate"):

The Debtor, a licensed Virginia attorney, was appointed as

administrator of the estate of Paul Klein ("Klein Estate") on May 28,

2002. The Debtor posted bond in the amount of $591,000.00, with

surety provided by Liberty.  On September 25, 2002, the Debtor filed

an inventory with Commissioner of Accounts for Fairfax County

("Commissioner") in which he reported Klein Estate assets totaling

$590,941.86.  The inventory was approved on February 23, 2003.

In March 2003, the Debtor executed a Surety Application and

Indemnity Agreement with Liberty, whereby Liberty agreed to provide

surety on the Debtor's bond and the Debtor agreed to "exonerate and

indemnify [Liberty] from and against all claims, losses, liability,

damages . . . costs, fees, expenses, suits, orders, judgments, or

adjudications" that Liberty may thereafter have incurred in connection with the bond.

On November 30, 2003, the Debtor filed a first account for the Klein Estate. Since the Debtor filed the first account in 2003, all of the subsequent accounts were and remained delinquent. The Debtor was ultimately removed as administrator of the Klein Estate on April 6, 2012. The Circuit Court of Fairfax County ordered that the Debtor was to remain liable on his bond until he had filed all required accounts for the Klein Estate, which he has yet to do. The substitute administrator received statements from the IRS and Virginia Department of Taxation indicating that the Klein Estate owed penalties and interest. On September 17, 2013, the Virginia State Bar Disciplinary Board suspended the Debtor's license to practice law within Virginia for two years. On September 5, 2014, a judgment was entered against the Debtor in favor of Liberty for $35,115.95 plus interest, fees, and costs.

II.     The Estate of Richard Hamilton[3] (the "Hamilton Estate"):

On March 31, 2003, the Debtor was appointed as administrator of the estate of Richard Hamilton ("Hamilton Estate"). The Debtor was required to post bond for $74,000.00, with surety provided by Liberty, and he entered into an indemnity agreement similar to the one used in the Klein Estate. The Debtor also executed a Fiduciary

---

[3] The Court's summary judgment opinion erroneously refers to the Hamilton Estate as the Paul Hamilton Estate. The correct name is Richard Hamilton.

Acknowledgment Form, indicating that he understood the extent of his duties and that he could be held liable for violations of the same. After appointment as administrator, the Debtor failed to respond to notices sent by the Commissioner regarding deficiencies in the first filed accounting, failed to file the subsequent accountings, and failed to pay the bond premiums, resulting in a claim against the Hamilton Estate. The Debtor was eventually removed as administrator of the Hamilton Estate. The substitute administrator was able to resolve the deficiencies without a loss payment from Liberty; however, Liberty did incur related attorney's fees.

III.    The Estate of Jillian Cho (the "Cho Estate") (collectively, the "Estates"):

On April 5, 2007, the Debtor was appointed as substitute fiduciary for the estate of Jillian Cho ("Cho Estate"). The Debtor posted a bond for $580,000.00, with surety provided by Liberty, through its wholly-owned subsidiary Ohio Casualty Insurance Company. Again, the Debtor entered into a similar indemnity agreement.

On December 6, 2010, based on a report from the Commissioner of Accounts for Prince William County, the Prince William County Circuit Court ordered that the bond was to be forfeited in the amount of $21,250.52 for Debtor's "misfeasance and/or malfeasance." On the

same date, a judgment was entered in favor of Liberty against the Debtor for $29,856.03 plus interest.

Supplemental findings of fact.  Based on the evidence presented at the trial held on September 1, 2017, the Court supplements its previous factual findings as follows:

At all relevant times, the Debtor understood that he had accepted and agreed to perform fiduciary duties as administrator and guardian for the three Estates, including the duty to timely file accountings and tax returns.[4] The Fiduciary Acknowledgement Form signed by the Debtor on March 31, 2003, upon his appointment to the Hamilton Estate, included the following language:

> As Fiduciary, I understand I am charged with the general responsibilities as follows: ... (3) Filing any individual or fiduciary income or estate tax returns required by state or federal government... (5) Filing a Settlement of Account OR a Statement in Lieu of Accounts with the Commissioner of Accounts no later than 16 months after qualification date. (6) Paying all probate taxes due to the Clerk of the Circuit Court... (9) Notifying the Commissioner of Accounts...of any change of my address and phone number...***I understand that I may be held liable for a violation of the above***." (emphasis added).

Pl. Ex. 33.  Despite being aware of his fiduciary obligation[5] to file accountings and tax returns for the Klein Estate[6] and the Hamilton Estate, the Debtor

---

[4] Tr. 25-26.  (References to transcript are to the transcript of the trial conducted on September 1, 2017, Docket 49.)

[5] The Debtor:  "[B]y signing it I indicated that I read these and I was responsible for them."  Tr. 28:5-6.

[6] The Debtor was appointed to the Klein Estate in May of 2002.  Tr. 24:1-4.

failed to file numerous accounts with the Commissioner of Accounts and failed to file required tax returns.[7]

The Debtor's law office was located at 9257 Lee Avenue, Manassas, Virginia, until sometime in 2004-05. In June of 2006, the Debtor established a law office at 9240-A Mosby Street, Manassas, Virginia. He closed his law office at the Mosby Street address in 2009.[8]

The Debtor did not notify persons associated with the Estates, including the Commissioners of Accounts for Fairfax and Prince William Counties, of his closure of the Mosby Street office, nor did he provide the Commissioners with a forwarding address.[9] Numerous late filing notices were sent to the vacant Mosby Street office.[10]

In August 2009, the Debtor was discharged as guardian of the Cho Estate and replaced with Peter K. McCrary ("McCrary"). McCrary's accounting report for the Cho Estate found that the Debtor "ha[d] failed in his various fiduciary duties, to wit:...(c) To file his Report of Initial Accounting for Estate (in a form that can be approved by the Commissioner) regarding the amount of [the previous fiduciary's] bond that should be forfeited, (d) to file an inventory in a form that can be approved by the Commissioner, (e) to file the first of two annual accountings, (f) to prepare and file Ms. Cho's tax returns for 2007 and 2008," and that "from the

---

[7] Tr. 31:8-11; 78-79; 81:7-13. Pl. Exs. 12, 14, 15, 17, 22, 34, 35, 37, 38, 40, 43, 44.
[8] Tr. 50:3-19.
[9] Tr. 75:1-5; Tr. 79:11-15.
[10] Pl. Ex. 12; Pl. Ex. 34.

condition of Ward's files, it is apparent that regular accountings for that period are not possible."[11] After McCrary's appointment, he discovered that a number of Ms. Cho's checks received by the Debtor had never been deposited. Some of the checks discovered by McCrary were related to the Debtor's predecessor, but five of the checks had been issued after the Debtor's appointment and were recovered from his files.[12]

On November 10, 2009, the Commissioner of Accounts for Fairfax County issued a summons to the Debtor for the production of "[p]roper accounts as required by law, together with required vouchers and fees," for the Klein Estate.[13] After failing to serve him at the Mosby Street address, the Commissioner successfully served the Debtor at his home address on February 23, 2010.[14] A similar summons was issued regarding the Hamilton Estate on May 12, 2010, which was served on the Debtor on December 7, 2010. [15] When the Debtor failed to respond to either summons, the Commissioner of Accounts filed Petitions for Rules to Show Cause in the Klein Estate and Hamilton Estate on June 8, 2010 and January 31, 2011, respectively.[16] The Circuit Court of Fairfax County entered an Order for a Rule to Show Cause on July 16, 2010, directing the Defendant to show why he should not be held in contempt for his failure to file a proper account in

---

[11] Pl. Ex. 51.
[12] Tr. 69-70, 104-106.
[13] Pl. Ex. 15.
[14] Pl. Ex. 15.
[15] Pl. Ex. 35.
[16] Pl. Ex. 14; Pl. Ex. 37.

the Klein Estate.[17]  On November 5, 2010, the Commissioner of Accounts filed a Petition to Remove Fiduciary in the Klein Estate, stating that the second through seventh accounts were delinquent and that "the fiduciary's failure to file proper accounts requires that he be removed as administrator."[18]

On December 6, 2010, pursuant to McCrary's report, the Prince William County Circuit Court entered an order in connection with the Cho Estate stating that the Commissioner of Accounts for Prince William County had determined that "by reason of [Defendant's] misfeasance and/or malfeasance," the Defendant's bond was to be forfeited in the amount of $21,250.52.[19]  The Court also entered judgment in favor of the Plaintiff against the Defendant.[20]

Despite the earlier delinquency notices and Rules to Show Cause, the Commissioner of Accounts for Fairfax County provided the Debtor with another opportunity to catch up on the Hamilton Estate accountings.[21]  The Debtor approached an attorney named Michael Doherty ("Doherty") for help with administering the Klein and Hamilton Estates.[22]  The Debtor and Doherty attended a hearing on the Rule to Show Cause in the Hamilton

---

[17] Pl. Ex. 17.
[18] Pl. Ex. 17.
[19] Pl. Ex. 55.
[20] Pl. Ex. 55.
[21] Pl. Ex. 38.
[22] Tr. 119-120.

Estate on June 17, 2011.[23]  Doherty later appeared on behalf of the Debtor in other proceedings in the Klein and Hamilton matters.  Doherty assisted the Debtor in preparing and submitting a multi-year accounting for both Estates; however, the multi-year accounting for the Klein Estate was not submitted because Doherty was unable to obtain the Debtor's signature on the accounting.[24]

Sometime in January of 2012, the Debtor's son was admitted to the hospital with a serious medical condition.[25]  At that time, the Debtor stopped communicating with anyone related to the Klein or Hamilton Estates.

The Circuit Court of Fairfax County issued an Order on April 6, 2012, removing the Debtor as administrator of the Klein Estate and, on June 8, 2012, issued a similar order in connection with the Hamilton Estate.[26]  Both orders referenced the Debtor's failure to perform his duties as administrator in a diligent manner.

On September 17, 2013, the Virginia State Bar Disciplinary Board suspended the Debtor's license to practice law for two years.[27]  The Board specifically referenced the Debtor's deficiencies in administering the Klein and Hamilton Estates.

Liberty's bond was not forfeited in the Hamilton Estate matter; however, Liberty incurred $1,556.77 in attorney's fees due to the Debtor's

---

[23] Pl. Ex. 39.
[24] Tr. 125:20-24.
[25] Tr. 149-150.
[26] Pl. Ex. 22; Pl. Ex. 43.
[27] Pl. Ex. 56.

deficiencies.[28]  The Debtor has not paid any amount to Liberty towards the Klein or Cho judgments nor has he paid Liberty any of the attorney's fees that are related to the Hamilton Estate.

## Conclusions of Law

The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334 and the Order of Reference of the U.S. District Court for the Eastern District of Virginia entered August 15, 1984.  This is a core proceeding under 28 U.S.C. § 157(b)(2)(I) (determinations as to the dischargeability of particular debts).   The Plaintiff bears the burden of proving all of the elements of non-dischargeability under § 523 by a preponderance of the evidence. *Grogan v. Garner*, 498 U.S. 279, 286 (1991); *Kubota Tractor Corp. v. Strack (In re Strack),* 524 F.3d 493, 497 (4th Cir. 2008).

The Supreme Court, in *Bullock v. BankChampaign, N.A.*, 679 U.S. 267 (2013), established the standard for proving defalcation under 11 U.S.C. § 523(a)(4).   In holding that proving defalcation requires a showing of intentional misconduct or at least reckless disregard of a known duty, the Court stated that:

> [W]here the conduct at issue does not involve bad faith, moral turpitude, or other immoral conduct, the term requires an intentional wrong. We include as intentional not only conduct that the fiduciary knows is improper but also reckless conduct of the kind that the criminal law often treats as the equivalent. Thus, we include reckless conduct of the kind set forth in the Model Penal Code. Where actual knowledge of wrongdoing is lacking, we consider conduct as equivalent if the fiduciary "consciously disregards" (or is willfully blind to) "a substantial

---

[28] Pl. Ex. 46.

and unjustifiable risk" that his conduct will turn out to violate a fiduciary duty. ALI, Model Penal Code § 2.02(2)(c), p. 226 (1985). See *id*., § 2.02 Comment 9, at 248 (explaining that the Model Penal Code's definition of "knowledge" was designed to include " 'wilful blindness' "). That risk "must be of such a nature and degree that, considering the nature and purpose of the actor's conduct and the circumstances known to him, its disregard involves a gross deviation from the standard of conduct that a law-abiding person would observe in the actor's situation." Id., § 2.02(2)(c), at 226 (emphasis added). Cf. *Ernst & Ernst v. Hochfelder,* 425 U.S. 185, 194, n. 12, 96 S.Ct. 1375, 47 L.Ed.2d 668 (1976) (defining scienter for securities law purposes as "a mental state embracing intent to deceive, manipulate, or defraud").

569 U.S. at 274.

The case of *Cincinnati Insurance Co. v. Chidester* (*In re Chidester*), 524 B.R. 656 (Bankr. W.D. Va. 2015), in which the court applied the *Bullock* standard to facts that are similar in many material aspects to this case, offers valuable guidance. In *Chidester*, a layperson appointed as conservator for his stepfather failed to file a final accounting following the stepfather's death. The insurance company that provided the bond agreement obtained a judgment against the debtor for indemnification and sought to have the debt declared nondischargeable pursuant to § 523(a)(4). The debtor had received a notice from the Commissioner of Accounts informing him of his duty to file a final accounting but failed to take the necessary steps to file the accounting. The court granted summary judgment to the insurance company after finding that the debtor understood the risk of violating his fiduciary obligation and that his failure to act was unjustified, holding that "no reasonable juror could find that such conduct does not constitute a gross deviation from the standard

of conduct that a law-abiding person would observe." *Id*. at 666.

In *Chidester*, Chief Judge Connelly, relying in part on a thorough analysis of *Bullock* included in another case, *MacArthur Co. v. Cupit (In re Cupit),* 514 B.R. 42 (Bankr. D.Colo. 2014), *aff'd* 541 B.R. 739 (D. Colo. 2016), interpreted the Supreme Court's holding to find that its "heightened *mens rea* standard" requires a creditor to "prove by a preponderance of the evidence that the debtor's actions rose to the level of an 'intentional wrong,' which includes 'reckless' behavior as defined by the Model Penal Code. Accordingly, if the debtor does not intentionally or knowingly commit a wrongful act resulting in the violation of the fiduciary duty, the court must at least find that the debtor 'consciously disregard[ed] a substantial and unjustifiable risk' that the actions could result in such a violation." *Id*. at 661 (citations omitted). *See also Cupit*, 514 B.R. at 51 ("There must be some evidence that the debtor was aware of the fiduciary duty and of the risk that his conduct would violate that duty."). Moreover, the court must "measure the magnitude of the potential breach that may occur from [the debtor's] conduct when considering whether the risked harm was substantial and unjustifiable." *Chidester*, 524 B.R. at 662.[29]

*Chidester* correctly points out that under the *Bullock* standard, the risk consciously disregarded by the debtor is "the risk [that] the conduct might

---

[29] "In applying the *Bullock* standard, courts consider whether the debtor 'consciously disregards' a risk from the debtor's subjective perspective, but in assessing the nature and magnitude of the risk, courts employ the reasonable person standard." *Chidester*, 524 B.R. at 662, n.23.

violate a fiduciary duty, rather than [the risk] of a resultant injury, loss or harm to the beneficiary." *Id*. at 661. Therefore, the "debtor's state of mind is a crucial element in resolving a § 523(a)(4) cause of action." *Trustees of the Sheet Metal Workers' Nat'l Pension Fund v. Kakareko (In re Kakareko)*, No. 14-73390, Adv. Pro. No. 14-08229, 2017 WL 3084386, at \*10 (Bankr. E.D.N.Y July 19, 2017).[30]

In this case, the Court must evaluate the Debtor's state of mind over a period of nearly a decade. The Debtor testified at length during the trial, maintaining that he did not know that his conduct was improper or that there was a substantial risk that his conduct would violate his fiduciary duties to any of the Estates. However, after considering the Debtor's testimony and demeanor, along with the evidence presented by the Plaintiff, the Court does not find his testimony to be credible.

During his testimony, the Debtor at times was able to lucidly recall specific events; however, when confronted with unfavorable evidence, his memory was hazy.[31] In some instances, his testimony was directly contradicted by other evidence and, on at least one occasion, recanted after hearing the testimony of another witness. The following testimony

---

[30] *Citing, inter alia, Wang v. Ke (In re Ke),* No. 09-32272, Adv. Pro. No. 09-50132, 2013 WL 4170250, at \*13 (Bankr. N.D.N.Y. Aug. 14, 2013)*, judgment aff'd sub nom. Ke v. Wang,* 628 F. App'x 10 (2d Cir. 2015) ("In light of the standard set by the Supreme Court in *Bullock*, Debtor's credibility is highly relevant to [plaintiff's] § 523(a)(4) nondischargeability claim.").

[31] *See, e.g., In re T.H.*, 529 B.R. 112, 124 (Bankr. E.D. Va. 2015) ("[T]he Court finds that [witness's] coincidentally lucid recollection of certain events compared to the otherwise hazily-remembered day more closely reflects what he wishes had occurred than it does the reality of the day's events." ).

demonstrates the contradictions between the Debtor's testimony concerning

the transfer of his files to the substitute guardian in the Cho Estate, and that

of the substitute guardian, McCrary, whose testimony the Court found to be

highly credible:

> **The Debtor:**
>
> A:      They were in a box. They were ready to go. They were --
> it's not like I had to say wait a minute, let me get them all
> together or wait a week and I can get them all together. We
> walked to my office. I walked straight in, got the box, put it in
> his hand.
> Q:      And there just handed him a box and get all the records.
> A:      Yeah, everything for that -- I don't know if it was one,
> maybe two boxes, but everything was in the box or boxes, and I
> was moving.[32]
>
> **McCrary:**
>
> Q:      You heard Mr. Ward testify that he simply gave you a box
> of documents and that it was essentially a seamless transition.
> Is that true?
> A:      No, that's not an accurate statement. He did not give me a
> box full of his -- he had no organized file for this guardianship.[33]

In fact, when McCrary, who had previously had difficulties reaching the

Debtor to arrange a transfer of the records of the Cho Estate,[34] happened to

meet the Debtor by chance, he was able to persuade the Debtor to

immediately take him to his office to retrieve the records.[35]   McCrary

described the Debtor's office as being "in complete disarray.  Any file that he

---

[32] Tr. 72:22-25, 73:1-6.
[33] Tr. 103-04.
[34] Tr. 101:20-25; 102:1-9.
[35] Tr. 102:15-21.

had it was not in place."[36]  McCrary also testified that the electricity to the office had been turned off, a fact initially disputed then subsequently acknowledged by the Debtor.[37]

The Debtor's testimony that his failure to file accountings for the Klein Estate was the fault of the Commissioner of Accounts, who was unwilling to approve his initial accountings, that the Commissioner's staff assured him that there was nothing wrong with not filing subsequent accountings, and that the Commissioner was unwilling to communicate with him, was directly contradicted by notices from the Commissioner and court orders seeking those same accountings.[38]  His failings in the Cho Estate, for which the Debtor offered little or no justifiable explanation, are evident from the trial record and McCrary's testimony.  The Debtor's description of his actions with respect to the Cho Estate were directly contradicted by McCrary, who determined that he had a responsibility to report the Debtor's failings to the Virginia State Bar out of concern for all of his clients.[39]

The Debtor's lack of credibility stands in contrast to the evidence of the Plaintiff, which the Court finds to be compelling. The Debtor admitted that he signed the Fiduciary Acknowledgement Form on March 31, 2003, acknowledging that he was aware of his fiduciary duties from at least that date

---

[36] Tr. 103:13-14.
[37] Tr. 153.
[38] Pl. Ex. 20; Pl. Ex. 34; Pl. Ex. 38; Pl. Ex. 40.
[39] Tr. 106:19-25, 107:1-6.

forward.[40]  Thus, it is clear that the Debtor was aware of his fiduciary duties to each of the Estates.

The Debtor testified that personal problems, the most serious of which was his son's hospitalization, contributed to his failures.  The record does indeed corroborate the Debtor's lapse in communication with anyone regarding the Estates beginning in January, 2012, the point in time when the Debtor testified that he remained by his son's hospital bedside for 24 hours a day, seven days a week.  As serious as the Debtor's personal problems may have been, however, they do not excuse his stark lack of attention to the needs of his clients for the nearly decade-long period preceding 2012 nor do they constitute an exception to the *Bullock* standard.[41]

By the end of 2011, the Debtor had already been replaced as fiduciary and had his bond forfeited for "misfeasance and/or malfeasance" in connection with the Cho Estate.[42]  The Commissioner of Accounts had already issued summonses to the Debtor and filed Petitions for Rules to Show Cause in the Klein and Hamilton Estates due to his failure to file accountings.[43]  The Debtor had already sought assistance from Doherty to address his deficiencies.  The

---

[40] As a licensed attorney, the Debtor should be fully aware of the fiduciary obligations associated with acting as administrator of an estate and guardian of an incapacitated person.  *Cf., Chidester*, 524 B.R. at 666 ("Although the concept of fiduciary duties is an amorphous one to many individuals outside of the legal field, the evidence demonstrates that Mr. Chidester understood the importance of his duties as conservator.").

[41] The Debtor acknowledged that his son's hospitalization in 2012 did not impact his performance of his fiduciary duties through at least 2012.  Tr. 57:8-11; 61-62.

[42] Pl. Ex. 55.

[43] Pl. Ex. 14; Pl. Ex. 15; Pl. Ex. 35; Pl. Ex. 37.

Debtor had also relocated his law office without notifying clients and officials and without providing a forwarding address.[44]

In each Estate, the Debtor consciously disregarded the risk that his failures to act would breach his fiduciary duties.[45]   Instead of taking further action to compel the approval or denial of his first accountings, or to compel responses from the Commissioner, by his own admission he essentially did nothing—for years.[46]  His child's 2012 hospitalization has no bearing on his actions prior thereto and would not justify his extended failure to at least communicate his unavailability to others.  In each Estate, the Court finds that the Debtor was subjectively aware that his conduct might violate his fiduciary duties.   The Court further finds that the Debtor acted recklessly, as contemplated under the *Bullock* standard, his testimony to the contrary notwithstanding.

The Court also finds that the risks the Debtor consciously disregarded were substantial and unjustifiable and that his conduct represented a "gross

---

[44] Tr. 74-75.

[45] The Debtor's testimony, whether credible or not, that he was told by an employee of the Commissioner of Account's office that he was "fine" despite his failure to file yearly accountings demonstrates that he was aware that failing to file them would constitute a breach of his fiduciary duties. Tr. 87-88.  With respect to the Cho Estate, the Debtor knew he was required to maintain estate funds in a separate account and he would certainly have been aware of his duty to deposit checks received by him for the estate into the account; his conscious failure to do so, as reflected by the accumulation of stale checks in his file, is a fundamental breach of his fiduciary duty.  In each case, even if the Debtor did not consciously disregard his duties, he was willfully blind to the risks that his conduct would violate a fiduciary duty.

[46] *Cf. Figuers v. Roberson (In re Roberson)*, Adv. Pro. No. 13-01161-BFK, 2014 WL 1876340, at *12 (Bankr. E.D. Va. May 7, 2014) (court finding conscious disregard of known duties where defendant failed to reconcile bank statements for four years).

deviation from the standard of conduct that a law-abiding person would observe." *Bullock*, 569 U.S. at 274 (citation omitted). Any reasonable person and, in this case, any reasonable attorney would have understood the likelihood that the Estates would be harmed. The magnitude of the harm that might result was foreseeable and includes the damages for which the Plaintiff seeks indemnification.

Accordingly, the Court finds that Liberty has established by a preponderance of the evidence that the Debtor committed defalcation, as defined in § 523(a)(4) and interpreted in the Supreme Court's *Bullock* decision. Because the underlying debts are nondischargeable, so are the associated attorney's fees. *Gupta v. Brown (In re Brown)*, Adv. Pro. No. 15-01028-BFK, 2016 Bankr. LEXIS 4074, at *50 (Bankr. E.D. Va. Nov. 28, 2016) (generally an award of attorney's fees follows the non-dischargeable nature of the award). In addition to the attorney's fees, under the "status dependent doctrine" previously recognized by this Court, other ancillary debts related to the two state court judgments are nondischargeable. *Cooley v. Sposa (In re Sposa)*, 31 B.R. 307, 310 (Bankr. E.D. Va. 1983).

Both of the state court judgments consist of amounts forfeited on the fiduciary bonds as a result of the Debtor's defalcations. The attorney's fees incurred by the Plaintiff in connection with the Hamilton Estate also resulted from the Debtor's defalcation. Therefore, all of the Plaintiff's claims are nondischargeable.

**Conclusion**

For the foregoing reasons, the Court will enter a separate order granting judgment to Plaintiff for $1,556.77 in attorney's fees arising from the Hamilton Estate and further declaring (1) the Plaintiff's judgment arising from the Klein Estate entered on September 5, 2014, in the amount of $35,115.95 plus interest, fees and costs, to be nondischargeable under

§ 523(a)(4), (2) Plaintiff's claim for $1,556.77 in attorney's fees arising from the Hamilton Estate to be nondischargeable under § 523(a)(4), and (3) the Plaintiff's judgment arising from the Cho Estate entered on December 6, 2010, in the amount of $29,856.03 plus interest and five percent damages pursuant to § 49-27 of the Code of Virginia to be nondischargeable under

§ 523(a)(4).

A separate order consistent with the findings and rulings of this opinion will be issued.

Signed: November 29, 2017          /s/ Keith L. Phillips
                          United States Bankruptcy Judge

Entered on Docket: November 29, 2017

Copies to:

John Paul Goetz
John Goetz Law, PLC
86 W. Shirley Avenue
Warrenton, VA 20186

James R. Schroll
Bean, Kinney & Korman
2300 Wilson Boulevard 7th Floor
Arlington, VA 22201

Timothy Allen Ward, Sr.
6415 Steeple Chase Lane
Manassas, VA 20111